IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| William Smallwood, *et al*., | : | Case No. 1:15-cv-336 |
| | : | |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | |
| Bank of America, N.A., | : | Order Granting Defendant's Motion to Dismiss |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Bank of America, N.A.'s Motion to Dismiss the Plaintiffs' Complaint. (Docs. 5, 7.) Plaintiffs oppose the Motion. (Doc. 6.) For the reasons that follow, Defendant's Motion will be GRANTED.

## I. BACKGROUND[1]

### A. Plaintiffs' Application for Loan Modification

The well-pleaded allegations of the Complaint are taken as true for purposes of the pending Motion to Dismiss. The current action stems from Plaintiffs William and Golda Smallwood's mortgage loan serviced through Bank of America, N.A. ("BOA"). The Smallwoods refinanced their residential real property in Hamilton, Ohio on February 7, 2008 with a note secured by a mortgage serviced by BOA.

Plaintiffs allege that in November 2010, they sought assistance from Defendant by inquiring into a modification of their mortgage loan.[2] Plaintiffs claim that in February 2011, BOA told them that they had been approved for a loan modification. However, in a letter dated March 3, 2011, BOA denied their request. On March 4, 2011, Plaintiffs spoke with a representative, who told them that their loan modification was denied in error and instructed

---
[1] The Court has drawn the background facts from Plaintiffs' Complaint (Doc. 1) unless otherwise indicated.
[2] In March 2011, BOA filed a foreclosure action against the Smallwoods, but the action was dismissed on January 13, 2012.

them to appeal the denial. In May 2011, BOA again informed the Smallwoods that they did not qualify for a mortgage loan modification. In July 2011, the Smallwoods' first appeal of the original loan mortgage modification was denied by BOA without explanation.

During December 2011, the Smallwoods, through counsel, resumed their efforts to obtain a mortgage loan modification. In April 2013, the Smallwoods received a letter from BOA stating that their loan was not eligible for modification. The Smallwoods assert that they provided BOA's counsel with all documents to file an appeal of the second denial of their loan modification. In September 2013, the Smallwoods learned that their appeal had never been filed.

### B. September 5, 2013 Letter

On September 5, 2013, the Smallwoods, through counsel, sent a letter to BOA. The letter recited that they had been working with BOA to obtain a loan modification since 2010 and "believe that their account is in error because it was improperly underwritten for a loan modification under the Fannie Mae Modification Program and/or the Home Affordable Modification Program ("HAMP")." (Doc 1-7 at PageID 50.) The Smallwoods' letter also requested a list of information related to "the review of their loan for HAMP, fees, costs, and escrow accounting of their loan," including a list of ten specific items.[3] (*Id*. at 50–51.)

---

[3] The list of ten items includes:
1. The name and contact information of a representative of Bank of American whom we can contact regarding review of this loan for a modification;
2. The steps taken by Bank of America to look into my clients' concerns that their loan was improperly underwritten for a loan modification;
3. The name, address, and telephone number of the owner of the note, plus the name of the master servicer of the note;
4. A complete payment history of how payments and charges were applied, including the amounts applied to principal, interest, escrow, and other charges;
5. The current interest rate on this loan and an accounting of any adjustments;
6. The current monthly payment amount, broken down into principal and interest, taxes and insurance;
7. A statement of the amount necessary to reinstate this loan;
8. A statement of the amount necessary to payoff [sic] this loan;

2

By letter dated September 19, 2013, BOA responded to the Smallwoods with the name, address, and phone number of Federal National Mortgage Association, identified as the owner of the note. (Doc. 1-9.) On September 26, 2013, BOA responded with an additional letter identifying itself as the loan servicer. (Doc. 1-10 at PageID 59.) The letter also provided a servicer's mailing address and telephone number, directed payments to be sent to payment processing, and provided the investor's name, address, and phone number. (*Id.* at 60.)

In addition, the correspondence included another message acknowledging receipt of the Smallwoods' September 5, 2013 correspondence. The letter stated that "Bank of America, N.A. has carefully reviewed your correspondence" and that "[c]ertain requests described in your correspondence constitute valid qualified written requests (QWRs) under the Real Estate Settlement and Procedures Act (RESPA) and will be addressed separately in accordance with RESPA guidelines." (Doc. 1-10 at PageID 61.) The letter also noted:

> Several of your remaining requests seem generally directed towards disavowing the enforceability of the loan documents signed at closing. We did not find any facts in your letter that would reasonably support a claim that the loan documents signed at closing are not enforceable[.] In addition, other requests seek documentation beyond what is available under the RESPA or other consumer protection statutes (i.e. through either a QWR, a request for validation of the debt, or other permitted requests.) As a result, other than the response to the valid QWRs in your letter, we decline to provide any further written response to your remaining requests at this time.

(*Id.*)

The letter also enclosed all available loan documents, and provided a breakdown of the monthly loan installment made on May 1, 2013, contact information for the Home Retention

---

9. A complete copy of the loan closing documents, including a true and accurate copy of the note and mortgage; and
10. A copy of all appraisals, property inspections, and risk assessments completed for this loan.

(*Id.* at 50–51.)

Department, and a breakdown of the total amount due on the home loan. (*Id*. at 62–63.) The letter also advised that certain information would be mailed separately, including a loan transaction history statement, response to a request for rescission, and a verification of mortgage.[4] (*Id*.)

### C. February 19, 2014 Letter

On February 19, 2014, the Smallwoods, through counsel, sent a second letter to BOA. Like their September 2013 letter, this second letter asserted that they "believe that their account is in error because it was improperly underwritten for a loan modification under the Fannie Mae Modification Program and/or the Home Affordable Modification Program ("HAMP")." (Doc. 1-11 at PageID 122.) The letter acknowledges being told that they were not eligible for a loan modification under HAMP, but asserts that they had run their own net present value evaluations

---

[4] Without repeating the full response here, the letter stated:

- "[A]ll available loan documents" were enclosed. (*Id*. at 62.)
- "A Loan Transaction History Statement will be mailed to you separately, providing a detailed outline of transactions associated with this loan." (*Id*.)
- "[A] Payoff Demand Statement valid through October 18, 2013 will be mailed to you separately." (*Id*.)
- "Annual escrow statements are issued to customers as scheduled. Copies of the issued statements are not retained. The information is available in electronic format for associates to assist during conversations with our customers or when customers view their loan information through our website." (*Id*.)
- "We've provided a breakdown of the subject loan's monthly installment that was made effective with the May 1, 2013 installment." (*Id*.)
- "This confirms no lender placed insurance has been purchased in association with this loan." (*Id*. at 63.)
- "[I]f you are seeking payment assistance on behalf of your client, you may contact our Home Retention Department ("HRD") directly. . ." (*Id*.)
- "We received your request asking for a breakdown of the total amount due on your clients' home loan. The payments are due on the 1st of each month and late charges are assessed if payments are not received by the 16th of the month. In addition to incurring late charges, the credit history may be affected if the payments are received more than 30 days past the due date. The following is a summary of the payments and fees that are due on the above referenced loans . . ." (*Id*.)
- "Your request for a rescission of the above referenced home loan was forwarded to the appropriate department. A detailed response will be provided separately." (*Id*.)
- "A Verification of Mortgage (VOM) was also mailed to you under separate cover that provides basic information regarding the loan." (*Id*.)

4

and determined they do qualify for a HAMP modification.  The Smallwoods state that they raised this concern with BOA's counsel and were advised to file an appeal; however, there is no record of an appeal ever having been filed.  The Smallwoods requested "information about the review of their loan for HAMP, fees, costs, and escrow accounting of their loan," including a list of seven particular items.[5]  (*Id*. at 123.)

On March 4, 2014, BOA responded to the Smallwoods by acknowledging receipt of their February letter and providing servicer and investor information.[6]  In correspondence dated April 2, 2014, BOA's counsel responded stating that the mortgage loan modification was denied by referring to prior denial letters.  That letter also enclosed payment history, information about the current owner and servicer of the note, and listed fees charged to the account.  Additionally, the letter enclosed a copy of the March 3, 2011 correspondence from the BOA stating the reason the Smallwoods were not eligible under the HAMP program and that the Smallwoods' appeal was denied on July 12, 2011.  The letter further stated that the Smallwoods' request for alternative loan modification options was declined on April 8, 2013 through correspondence from BOA, which was also enclosed, and directed the Smallwoods to the Home Retention Division for any

---

[5] The list of seven items included:
1. The name and contact information of a representative of Bank of America whom we can contact regarding review of this loan for a loan modification;
2. All necessary inputs used in evaluating my clients' request for a HAMP modification;
3. The reason(s) my clients were denied for a HAMP modification based on the inputs used.
4. The results of any NPV analysis Bank of America conducted on behalf of my clients' application for a HAMP modification, along with all documents and inputs used.
5. The steps taken by Bank of America to look into my clients' concerns that their loan was improperly underwritten for a loan modification.
6. The steps taken by Bank of America or its agents to review my clients' appeal of the denial of their HAMP modification application.
7. A list of documents Bank of America requires from my clients to formally appeal the denial of their HAMP modification request.

(*Id*. at 123.)

[6] Bank of America also responded to the Smallwoods' letter on March 27, 2104 stating that the TILA rescission period expired.  In correspondence dated March 31, 2014, Bank of America responded with the payment history.

existing modification options that may be available.  Finally, the letter stated that no further responses were required.[7]

### D. April 23, 2014 Letter

On April 23, 2014, the Smallwoods, through counsel, submitted a third letter to BOA. The letter stated that in their February 14, 2014 letter, counsel requested "information regarding the attempts my clients have made at obtaining a modification of their mortgage loan." (Doc. 1-17 at PageID 149.)  The letter stated that the response from BOA on April 2, 2014 "fails to provide much of the information requested," such as "the data and inputs used in evaluating my clients' request for a HAMP modification and the results of such evaluations." (*Id*.)  The

---

[7] Without repeating the full response here, the letter stated:
- "Enclosed is a Payment History that provides a detailed outline of transactions or the Loan during Bank of America's servicing."  (Doc. 1-16 at PageID 138.)
- "The fees that have been charged to the account that are not reflected in the Payment History are as follows: property inspection fees, $279.00; title fees, $1,360.00; court costs, $120.00; filing fees, $600.00; litigation management fees, $10,932.50; and process server fees, $400.00." (*Id*.)
- "With respect to your inquiry regarding the reason for the denial of the Borrower's HAMP request, enclosed please find a copy of the March 3, 2011 correspondence to the Borrower stating the reason the Borrower was not eligible under the program.  As you are likely aware, the Borrower appealed this decision.  Bank of America thereafter reviewed this decision and sent the Borrower the enclosed correspondence dated July 12, 2011, denying the Borrower's appeal." (*Id*. at 138–39.)
- "Please note that the Borrower's subsequent request for alternative Loan modification options was declined through correspondence dated April 8, 2013, a copy of which is enclosed.  Please note that the thirty day period for appealing this modification decline has passed.  Although the appeal period has passed, the Borrower is free to reapply for modification assistance if there has been a change in the Borrower's financial circumstances or other conditions which make a modification viable.  In the event the Borrower would like to explore any existing modification options that may be available, please have the Borrower contact Bank of America's Home Retention Division directly at (800) 669-6650." (*Id*. at 139.)
- "[T]he current owner of the note is Federal National Mortgage Association…"
- "Bank of America is the servicer of the Loan and has serviced the Loan since the Loan was originated." (*Id*.)
- "It is Bank of America's position that no further response to the Letter is required.  The remaining requests and/or allegations contained in the Letter do not require a substantive response under 12 C.F.R. §§ 1024.35–1024.36 (and/or the exceptions articulated therein), seek documentation or information beyond that which is available through a request for verification of debt made under 12 U.S.C. § 1692g, or do not otherwise require a response under state or federal law." (*Id*.)

6

Smallwoods requested a list of five particular documents relating to BOA's consideration of their request for loan modification.[8]

By letter dated June 5, 2014, BOA responded that it believed its February 19, 2014 response adequately addressed each inquiry in the Smallwoods' prior letter. It also stated that BOA was unable to locate the results of any net present value analysis that may have been performed, but that the loan was not declined due to a net present value determination. Rather, the loan was declined due to the fact that the Smallwoods' income would not support modification. The letter also noted BOA has no record of an appeal, and provided a list of information that it considers in evaluating a loan modification. Finally, the letter stated that BOA determined that no further response was necessary to the letter.[9]

---

[8] The list included:
   1. All data and inputs used in evaluating my clients' 2013 application for a HAMP modification;
   2. The results of any NPV analysis Bank of America conducted on behalf of my clients' application for a HAMP modification in 2013, along with all documents and inputs used;
   3. The steps taken by Bank of America to look into my clients' concerns that their loan was improperly underwritten for a loan modification;
   4. All documents Bank of America received from my clients in 2013 to appeal their denial for a HAMP modification, whether or not that appeal process was complete; and
   5. A list of documents Bank of America requires from my clients to formally re-apply for modification assistance.

(*Id*. at 150.)

[9] Without repeating the full response here, the letter stated:
- "With respect to your demand for copies of Net Present Value calculations, please be advised that Bank of America has been unable to locate the results of any Net Present Value analysis that may have been performed. In the event Bank of America is able to obtain this information, this information will be forwarded under separate cover. With respect to your suggestion that an error in the NPV calculation led the Borrower being wrongfully declined for a loan modification, please be advised that the Loan was not declined due to a NPV determination. Rather, the Loan was declined due to the fact that the Borrower's income would not support a modified payment. More specifically, the modification analysis performed by Bank of America on March 20, 2013 indicated that DTI was over 63.00%. At this time, the Borrower's financial information indicated that at the time of the modification analysis the borrower had monthly gross income of $3,477.38 and total monthly debt payment of $5,234.61. In calculating what the Borrower's monthly payments would be after a Loan modification, it was determined that the Borrower's income would not support a modified payment on terms Bank of America was able to offer the Borrower. For this reason, the Borrower was declined for a Loan modification." (Doc. 1-19 at PageID 158–59.)

### E. Procedural History

Plaintiffs initiated this lawsuit on May 21, 2015. In their Complaint, Plaintiffs allege Defendant violated provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et. seq*. Specifically, Plaintiffs assert one RESPA count, which includes several alleged statutory violations of 12 U.S.C. § 2605(e)(2), 12 U.S.C. § 2605(e)(3), 12 U.S.C. § 2605(k)(1)(D), 12 C.F.R. § 1024.35, and 12 C.F.R. § 1024.36 for failing to properly respond to the three letters the Smallwoods sent to BOA. On July 20, 2015, Defendant filed the Motion to Dismiss currently pending before the Court. (Doc. 5.) Plaintiffs oppose the Motion (Doc. 6), and it is now ripe for consideration by this Court.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader

---

- "With respect to your request for copies of documents submitted by the Borrower in connection with their appeal of this determination, and the steps taken to review this determination following the Borrower's appeal, please be advised that Bank of America has no record of the Borrower appealing this determination[.]" (*Id.* at 159.)
- "It is Bank of America's position that no further response to the Letter is required. The remaining requests and/or allegations contained in the Letter do not require a substantive response under 12 C.F.R. § 1024.35–1024.36 (and/or the exceptions articulated therein), seek documentation or information beyond that which is available through a request for verification of debt made under 12 U.S.C. § 1692g, or do not otherwise require a response under state or federal law." (*Id.*)
- "In your correspondence you also request that Bank of America consider a Loan modification. In order for Bank of America's Home Retention Division to review the Borrower's request for a modification of the Loan, the following items are required:
  - Letter of hardship
  - Evidence of income (2 most recent pay stubs)
  - Bank statements (2 most recent)
  - Monthly expenditure information
  
  Please forward the required information, along with the Borrower's request for modification, to Bank of America's Home Retention Division via facsimile at (866) 619-4249." (*Id.*)

is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677–78 (2009). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in a light most favorable to the plaintiff and accept the factual allegations as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The Court "need not, however, accept conclusory allegations or conclusions of law dressed up as facts." *Erie Cnty., Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012).

In ruling on a motion to dismiss, the court may consider written instruments that are exhibits to a pleading, as those are considered part of the pleading for all purposes. *Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 292 (6th Cir. 2015) (citing Fed. R. Civ. P. 10(c)). A court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*. (citing *Tellabs, Inc. v. Major Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007)). "Moreover, a defendant may, in certain circumstances, introduce into the pleadings documents that the plaintiff does not." *Id*. "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id*. (citing *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997)). Thus, in this case, the Court may consider documents relating to the Smallwoods' note, mortgage, and request for loan modification that are referenced in the Complaint and integral to the Smallwoods' claims. *Id*. (citing *Gardner v. Quicken Loans, Inc*., 567 F. App'x 362, 365 (6th Cir. 2014)).

**III. ANALYSIS**

    **A. Requirement of Loan Servicers to Respond to Qualified Written Requests**

Plaintiffs allege Defendant violated provisions of RESPA, 12 U.S.C. § 2605, *et. seq.*, and Regulation X, 12 C.F.R. § 1024, *et seq*.[10] The crux of Plaintiffs' claims is that Defendant violated RESPA by failing to investigate and respond to three Qualified Written Requests ("QWRs"), the majority of the inquiries within those letters revolving around Plaintiffs' request for and denial of a loan modification. Defendant argues it adequately responded to all three QWRs but contends that RESPA does not require it to respond to inquiries about loan modification applications or denials, as they fall outside of the scope of what may constitute a QWR.

Pursuant to 12 U.S.C. § 2605(e), "Duty of loan servicer to respond to borrower inquiries," any loan servicer of a federally related mortgage loan who receives a qualified written response from a borrower "for information relating to the servicing of such loan" must provide a written response acknowledging receipt of the correspondence within five days. 12 U.S.C. § 2605(e)(1)(A). "Servicing" is defined as:

> receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

---

[10] RESPA is a consumer protection statute that requires loan servicers to provide timely written responses to borrowers under certain circumstances. 12 U.S.C. § 2605. The Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X) is a Consumer Financial Protection Bureau regulation promulgated pursuant to section 1022(b) of the Dodd–Frank Act, 12 U.S.C. § 5512(b), and RESPA, 12 U.S.C. § 2601, *et seq*. Regulation X became effective on January 10, 2014. 78 FR 10696–01 (February 14, 2013) (codified at 12 C.F.R. pt. 1024). 12 C.F.R. § 1024.35 outlines error resolution procedures by which a borrower may notify a servicer of errors on its account, triggering a response by the servicer. 12 C.F.R. § 1024.36 outlines requests for information, under which a servicer must provider certain requested information pursuant to a QWR.

*Id*. at § 2605(i)(3). A "qualified written request" is:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id*. at § 2605(e)(1)(B).

A loan servicer must take one of three courses of action within thirty days of receiving a QWR from a borrower:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
> (i) to the extent applicable, a statement of the reasons for which the servicer believes that account of the borrower is correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes –
> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

*Id*. at § 2605(e)(2)(A)–(C). Failure to comply with 12 U.S.C. § 2605(e) is grounds for damages and costs under 12 U.S.C. § 2605(f).

### B. "Servicing" Does Not Include Inquiries About Loan Modification

Plaintiffs argue that *all* of the inquiries in their September 2013, February 2014, and April 2014 letters constituted QWRs, and Defendant's responses to their QWRs were insufficient under RESPA. Defendant acknowledges that Plaintiffs' three letters contained certain valid QWRs, but argues that inquiries relating to loan modification are *not* valid QWRs and require no response under RESPA. Defendant contends that it nonetheless went beyond its statutory obligation to provide an adequate response to *all* inquiries in Plaintiffs' three letters regardless of whether they constituted valid QWRs.[11]

Defendant relies upon the statutory language and recent case law to support its argument that it was not required to respond to inquiries relating to loan modification under RESPA. As noted above, 12 U.S.C. § 2605(e)(1)(A) imposes a duty upon a loan servicer to respond to a QWR that relates to "information relating to the *servicing* of [the] loan." (emphasis added). "Servicing" is defined within the statute as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan" and "making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id*. at § 2605(i)(3). The plain language of the statute supports Defendant's position that a request relating to loan modification does not relate to scheduled payments, principal and interest, or other payments received pursuant to the terms of the Smallwoods' loan with BOA. Rather, a loan modification is a request to alter the terms of a loan.

---

[11] Defendant also argues it is not obligated to respond to duplicative QWRs and that the majority of the requests in the February 2014 and April 2014 QWRs were repeated requests for information that had already been requested in Plaintiffs' September 2013 QWR.

12

Defendant also relies upon several cases in which district courts have held that a servicer's denial of a permanent loan modification and actions related to loan modification are outside the term "servicing" and cannot be pursued under RESPA. *Mbakpuo v. Civil Wells Fargo Bank, N.A.*, No. 13-2213, 2015 WL 4485504, at *8 (D. Md. July 21, 2015) (request for a loan modification did not relate to servicing of a loan); *Mayer v. EMC Morg. Corp.*, No 2:11-cv-147, 2014 WL 1607443, at *5–6 (N.D. Ind. April 22, 2014) (same); *Van Egmond v. Wells Fargo Home Mortg.*, No. 12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) (RESPA only obligates loan services to respond to borrowers' requests for information relating to servicing of their loans, which does not include loan modification information).

Plaintiffs counter that BOA had a duty to respond to Plaintiffs' QWRs in their entirety, because processing and evaluation loss mitigation applications is directly related to "servicing" of a loan. Plaintiffs do not cite any case law in support of this argument. Rather, Plaintiffs cite a panoply of regulations from Regulation X in which the words "loss mitigation" are used.[12] For example, Plaintiffs cite 12 C.F.R. § 1024.40, "Continuity of contact," which describes functions of servicer personnel, for the basis that "servicing" includes loss mitigation and loan modification. 12 C.F.R. § 1024.40 describes a servicer's obligation to "maintain policies and procedures reasonably designed to ensure that servicer personnel assigned to a delinquent borrower" perform certain functions, such as providing the borrower with accurate information about loss mitigation options, actions the borrower must take to be evaluated for loss mitigation options, the status of loss mitigation application submitted to the servicer and applicable

---

[12] Plaintiffs ignore the issue that their loan modification application, denial of the application, and September 2013 letter to Defendant all occurred prior to Regulation X's effective date. As Regulation X is not retroactive, expanding the interpretation of "servicing" to include language from Regulation X raises several red flags. *See Campbell v. Nationstar Mortg.* No. 14-1751, 611 Fed. App'x 288, 298 (6th Cir. 2015) (affirming district court's decision that Regulation X did not apply retroactively). The Court will not delve into these issues here, but points them out for the record.

13

deadlines, and complete records, documents, and information identified to evaluate a borrower for loss mitigation options. 12 C.F.R. § 1024.40(b). Plaintiffs assert that this regulation demonstrates Congress's clear intent that loss mitigation is an act of servicing and is governed by the mandates of RESPA. This regulation does not relate to a servicer's obligation to respond to a QWR, however, and appears to be irrelevant to the issue at hand. Accordingly, the Court is not persuaded that the "continuity of contact" or other sections of Regulation X that reference loss mitigation were intended to expand the definition of "servicing" under RESPA.[13]

Plaintiffs also attempt to distinguish the authority Defendant relies upon for the proposition that requests about loan modification do not constitute a valid QWR. For example, Plaintiffs argue that the *Van Egmond* case was decided prior to Regulation X's enactment. *See* 2012 WL 1033281, at *4. Defendant replied to this argument by directing the Court to cases decided after Regulation X's enactment. *See Mbakpuo*, 2015 WL 4485504, at *8; *Mayer*, 2014 WL 1607443, at *5. Moreover, the Court notes that in a recent case, *Bullock v. Ocwen Loan Serv., LLC*, No. 14-3836, 2015 WL 5008773, at *10–11 (D. Md. Aug. 20, 2015), the district court evaluated whether letters sent by a borrower to a servicer after the enactment of Regulation X constituted valid QWRs.[14] The court held that the plaintiff failed to plausibly allege that the Defendant violated 12 U.S.C. § 2605(e). *Id*. at *11. In relevant part, the Court rejected an argument that plaintiff's request about loan modification constituted a valid QWR, as "a request for information about loan modification does not constitute a QWR." *Id*. at *10.

---

[13] Plaintiffs also reference 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41. As noted above, 12 C.F.R. §§ 1024.35–36 relate to a servicer's requirement to respond to notice of errors and/or requests for documents pursuant to a QWR. 12 C.F.R. § 1024.41 governs loss mitigation procedures and how loss mitigation requests and applications must be reviewed and evaluated. As with 12 C.F.R. § 1024.40, the Court does not read these sections to expand the definition of "servicing" under RESPA.

[14] The Court notes that plaintiffs in the *Ocwen* case did not appear to raise the same argument advanced by the Smallwoods here, or that 12 C.F.R. § 1024.40 and/or Regulation X expanded the definition of servicing.

Based on this authority, the Court is persuaded that the statutory definition of "servicing" and the cases interpreting this language are persuasive and controlling here. The Court finds that Plaintiffs' September 2013, February 2014, and April 2014 inquiries to Defendant regarding information and documents about loan modification are not valid QWRs triggering an obligation on the part of the Defendant under RESPA.[15] As such, Plaintiffs' allegations that Defendant violated RESPA for failure to respond to such inquiries are not plausible.

To the extent Plaintiffs contend that Defendant otherwise failed to respond to their September 2013, February 2014, and April 2014 QWRs, the Court disagrees. Rather, having fully reviewed the QWRs and correspondence attached to the Complaint, the Court finds that Defendant adequately responded to Plaintiffs' valid QWRs. As has been well-documented in the Fact section of this Order, Defendant responded to each of Plaintiff's requests for information pertaining to the loan payment schedule and terms, as required under RESPA. With respect to a tertiary issue of whether Defendant improperly responded to requests for information about the owner of the note, the Court finds that "[r]equests for information pertaining to the identity of a note holder or master servicer do not relate to servicing." *Kelly v. Fairon & Assoc.*, 842 F. Supp. 2d 1157, 1160 (D. Minn. 2012).[16] Thus, no violation may be based on the allegation that Defendant improperly identified the owner of the Smallwoods' note.

Furthermore, the Court agrees with the Defendant that Plaintiffs have not stated a valid claim under 12 U.S.C. § 2605(e)(3). Plaintiffs allege that BOA provided information related to their note to credit reporting agencies within sixty days of receiving the QWR.[17] However, BOA is not required to halt credit reporting. *See Duplessis v. U.S. Bank Home Mortgage*, No. G-14-

---

[15] The Court notes, however, that Defendant did provide helpful information nonetheless.
[16] In any event, Defendant appeared to have provided this information to Plaintiff.
[17] The Court notes that Defendant makes a compelling argument that Plaintiffs' conclusory allegation does not meet the pleading standard but will nonetheless consider the merits of the argument.

222, 2014 WL 6463575, at *2 (S.D. Tex. Nov. 14, 2014) ("[T]he majority of Plaintiff's requests are clearly not aimed at securing information concerning the servicing of the loan or addressing any errors in payments and, thus, would not trigger any obligation on the part of Defendant to respond or to halt credit reporting"). As in *Duplessis*, although some correspondence contained requests for information that related to servicing the loan, Plaintiffs have failed to state a claim because BOA responded adequately. *Id*.

For the aforementioned reasons, the Court finds that Defendant's responses to the Plaintiffs' QWRs were adequate, and Plaintiffs' claims must therefore be dismissed. As such, Defendant's Motion to Dismiss the Complaint will be GRANTED.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss (Doc. 5) is GRANTED.

IT IS SO ORDERED.

                                                                                          S/Susan J. Dlott_____
                                                                                          Judge Susan J. Dlott
                                                                                          United States District Court